IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD SCHICKER,<br><br>Plaintiff,<br><br>vs.<br><br>LINCOLN FINANCIAL GROUP,<br><br>Defendant. | **8:19-CV-295**<br><br><br>**MEMORANDUM AND ORDER** |

This case comes before the Court on Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The Court finds that Plaintiff has failed to state a claim upon which relief can be granted because his tortious-interference claim is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, and because there is no private right of action for his claims under the Nebraska Unfair Insurance Trade Practices Act, Neb. Rev. Stat. §§ 44-1521-1535 (Reissue 2010). Accordingly, the Court grants Defendant's Motion to Dismiss.

## I.     BACKGROUND[1]

This case arises out of the payment of benefits under a life insurance contract administered by Defendant, Lincoln Financial Group (Lincoln Financial). Filing 1-2 at 2. Plaintiff, Richard Schicker, is a Nebraska attorney. Filing 1-2 at 2. In September 2017, an individual named Brandi Cady hired Schicker to represent her in her claim against Lincoln Financial. Filing 1-2 at 2. Cady sought payment on a life insurance contract following the death of her spouse in June 2017. Filing 1-2 at 2. At the time Cady hired Schicker, Lincoln Financial was refusing to pay the benefits she

---

[1] Although some of the facts recited herein may be disputed by Defendant, when deciding a motion to dismiss, the Court "must accept a plaintiff's factual allegations as true" and make all reasonable inferences in favor of the nonmoving party. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

sought. Filing 1-2 at 2. Under Cady and Schicker's contract, Schicker was to receive 40% of any amounts Cady recovered from Lincoln Financial. Filing 1-2 at 2.

Shortly after being hired, Schicker contacted Lincoln Financial employee Kara Vincent to notify her of his representation of Cady. Filing 1-2 at 2-3. Vincent returned Schicker's phone call four days later and offered to settle Cady's claim for $130,000. Filing 1-2 at 3. Schicker immediately communicated the offer to Cady. Filing 1-2 at 3. Schicker told Lincoln Financial that he felt it had no legally valid reason not to pay the full policy, and that he would seek to have Lincoln Financial pay his attorney fees for having to initiate a claim. Filing 1-2 at 3.

Two days later, a different Lincoln Financial employee, Cynthia Klenda, contacted Cady directly. Filing 1-2 at 3. During this phone call, Klenda agreed to pay Cady the full policy limits, and Cady accepted. Filing 1-2 at 4. In a follow-up email to Cady, Klenda stated, "[S]ince we are working together to get this claim completed . . . **you do not need an attorney to work with us to get this claim paid.**" Filing 1-2 at 4 (alteration in original). Klenda also emailed Cady a beneficiary statement so that Cady could direct how she would be paid. Filing 1-2 at 4.

Cady informed Schicker of her agreement with Lincoln Financial and provided him with copies of Klenda's emails. Filing 1-2 at 4-5. Schicker gave Lincoln Financial written notice that he sought to impose an attorney's lien on the policy proceeds, but Lincoln Financial paid the entire policy directly to Cady. Filing 1-2 at 5.

Schicker then filed suit against Lincoln Financial in the District Court of Douglas County, Nebraska. Filing 1-2 at 1. Schicker alleged Lincoln Financial had tortiously interfered with his contract with Cady by communicating with Cady directly and paying policy proceeds directly to her despite receiving notice of his attorney's lien. Filing 1-2 at 5. Schicker also alleged that Lincoln Financial violated two sections of the Nebraska Unfair Insurance Trade Practices Act by making

deceptive statements in violation of Neb. Rev. Stat. §§ 44-1525(2) & (10). Filing 1-2 at 5-6. Schicker sought 40% of the proceeds paid to Cady, plus costs and interest. Filing 1-2 at 6.

Lincoln Financial filed a Notice of Removal to this Court, asserting jurisdiction under 28 U.S.C. § 1331 because Schicker's claims arose out of an employee welfare benefit plan and were therefore governed by ERISA. Filing 1 at 2. Schicker did not file a motion to remand or otherwise oppose the removal. Subsequently, Lincoln Financial filed a Motion to Dismiss, claiming Schicker failed to state a claim upon which relief can be granted because his "state law claim for attorney fees incurred in the representation of the beneficiary of an employee welfare benefit plan in a claim for benefits due from the plan is preempted by [ERISA]." Filing 6 at 1.

## II.    DISCUSSION

### A.  Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v.*

*Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

### B. ERISA Preemption of the Tortious-Interference Claim

Although Schicker's Complaint does not delineate specific causes of action, the parties agree his primary claim is for tortious interference with his contract with Cady. *See* Filing 7 at 2 ("Though not expressly labeled as such, the allegations of the Complaint appear to attempt to set forth a state law claim for tortious interference by Lincoln . . . ."); Filing 8 at 1 ("Defendant correctly . . . notes that Plaintiff's claim is 'a state law claim for tortious interference by Lincoln . . . .'"). Lincoln Financial argues that Schicker's claim relates to an employee benefit plan and is therefore preempted by ERISA. Filing 7 at 2-6. Schicker does not dispute that Cady's claim for benefits arose under a plan governed by ERISA. Filing 8 at 2-3. Rather, Schicker counters that because Cady was paid the benefits she sought, his claim for attorney's fees should not be preempted. Filing 8 at 2-3. He argues Cady could not have brought an ERISA claim for attorney fees because she received the benefits in question. Filing 8 at 3.

"ERISA is a comprehensive legislative scheme that includes an integrated system of procedures for enforcement that are essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Moore v. Apple Cent., LLC*, 893 F.3d 573, 576 (8th Cir. 2018) (quoting *Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098, 1101 (8th Cir. 2017)). ERISA contains a preemption

provision which states its enforcement provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." 29 U.S.C. § 1144(a); *Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding*, 692 F.3d 888, 897 (8th Cir. 2012). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).

"Congress intended courts to read this [preemption] provision broadly, in order to protect ERISA's 'uniform regulatory regime over employee benefit plans.'" *Goding*, 692 F.3d at 897 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004)). "A State law 'relates to' an ERISA plan and is preempted if it has 'a connection with or a reference to such a plan.'" *Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 728 (8th Cir. 2017) (quotation marks omitted) (quoting *Express Scripts, Inc. v. Wenzel*, 262 F.3d 829, 833 (8th Cir. 2001)). This means that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Moore*, 893 F.3d at 576 (quoting *Davila*, 542 U.S. at 208–09, 124 S. Ct. 2488).

In accordance with the precept of broadly interpreting ERISA's preemption provision, courts have found numerous state-law torts "relate to" an employee benefit plan and are therefore preempted. *See Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000) ("Therefore, ERISA remedies preempt 'state common law tort and contract actions asserting improper processing of a claim for benefits' under an ERISA plan." (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987))). For example, in *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771-72 (8th Cir. 2006), the Eighth Circuit Court of Appeals determined the plaintiff's state-law claim for fraud was preempted by ERISA. Like

Schicker, the plaintiff in *Parkman* claimed that the insurance company administering her disability benefits "mishandled her claim by directly communicating with Parkman after she had retained an attorney and by indicating to Parkman that she did not need an attorney." *Id.* at 771. The Eighth Circuit concluded that "because the essence of Parkman's claim relate[d] to the administration of plan benefits, it f[ell] within the scope of ERISA" and was therefore preempted. *Id.* at 771-72.

Courts have likewise found that tortious-interference claims involving benefit plans are generally preempted by ERISA. *See, e.g.*, *Painters Dist. Council No 58 v. RDB Universal Servs., LLC*, No. 4:14CV01812 ERW, 2016 WL 1366600, at *12 (E.D. Mo. Apr. 6, 2016) (finding tortious interference with contract or business expectancy action was preempted by ERISA in claim by multi-employer pension plan against general contracting company that had failed to make payments to pension-plan employees under alleged collective bargaining agreement), *modified on reconsideration in part*, No. 4:14CV01812 ERW, 2016 WL 4368098 (E.D. Mo. Aug. 16, 2016); *Jump v. Speedway LLC*, 23 F. Supp. 3d 1024, 1029-30 (D. Minn. 2014) (finding ERISA preemption of claim for tortious interference with contract where employee sued employer for misrepresenting a reduction in his previously accrued retirement benefits); *Schoedinger v. United Healthcare of the Midwest, Inc.*, No. 4:07CV904SNLJ, 2011 WL 97735, at *7-8 (E.D. Mo. Jan. 12, 2011) (finding ERISA preempted claim for tortious interference with a business expectancy where plaintiffs sued plan administrator for wrongfully interfering with the patient–doctor relationship by not paying the doctor in a timely manner).

In contrast, those cases finding state-law actions were not preempted by ERISA tend to involve only tangential connections to employee benefit plans. *See, e.g.*, *Bannister v. Sorenson, 103 F.3d 632, 635 (8th Cir. 1996)* (stating that state actions which are "too tenuous, remote, or peripheral" to warrant preemption would include "run-of-the-mill state-law claims such as unpaid

rent, failure to pay creditors, or even torts committed by an ERISA plan" (citation omitted)); *see also Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 834, 108 S. Ct. 2182, 2187-88, 100 L. Ed. 2d 836 (1988) (finding state garnishment action to recover on judgment awarded in separate state case was not preempted by ERISA).

The Court concludes Schicker's claim "relates to" an ERISA plan under the preemption provision, 29 U.S.C. § 1144(a). Schicker was representing Cady on a claim for life insurance benefits governed by ERISA. The fact that Cady ultimately received the benefits she sought does not change the nature of the claim or the fact that it related to an employee benefit plan. Like in *Parkman*, "the essence of [Schicker]'s claim relates to the administration of plan benefits." *Parkman*, 439 F.3d at 771-72. Furthermore, Schicker's request for attorney fees under a tortious-interference theory is a "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . and is therefore pre-empted." *Moore*, 893 F.3d at 576 (quoting *Davila*, 542 U.S. at 208–09, 124 S. Ct. 2488). The civil enforcement statute provides for the recovery of attorney fees "[i]n any action under this subchapter." 29 U.S.C. § 1132(g)(1). The Eighth Circuit interpreted the phrase "any action" to refer solely to an action initiated in court, and thus concluded that ERISA's attorney-fee provision "does not extend to pre-litigation administrative proceedings." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1011 (8th Cir. 2004). In *Parke*, the plaintiff was denied attorney fees incurred during her request for administrative review of her denial of benefits prior to filing suit. *Id.* at 1003. Similarly, Schicker is requesting attorney fees for the pre-litigation correspondence he engaged in with Lincoln Financial on Cady's behalf. Schicker's attempt to recover pre-litigation attorney fees under an alternate, state-law theory in contradiction of ERISA's civil enforcement statute is preempted.

Accordingly, Schicker's allegation of tortious interference with a contract fails to state a claim upon which relief can be granted.

### C. Nebraska Unfair Insurance Trade Practices Act

Although the parties focus on Schicker's tortious-interference claim, the Court reads his Complaint as also setting forth a cause of action under the Nebraska Unfair Insurance Trade Practices Act. Filing 1-2 at 5-6. Schicker argues that Lincoln Financial's contact with Cady violated Neb. Rev. Stat. § 44-1525(2) (Reissue 2010) (prohibiting making a statement which is untrue, deceptive, or misleading in the business of insurance) and Neb. Rev. Stat. § 44-1525(10) (Reissue 2010) (prohibiting making a false or fraudulent statement for the purpose of obtaining money or a benefit in the business of insurance). Filing 1-2 at 5-6. He argues Lincoln Financial undertook the contacts despite knowing he was Cady's legal representative in order to prevent the Nebraska Director of Insurance from discovering the company had failed to comply with the regulations and state statutes requiring it to provide certain advance notice to Cady and to pay interest and attorney fees on her claim. Filing 1-2 at 5-6. Lincoln Financial's preemption argument in its Motion to Dismiss encompasses Schicker's allegations under the Nebraska Unfair Insurance Trade Practices Act. Filing 6 at 1 (seeking to dismiss Schicker's entire Complaint for failure to state a claim due to ERISA preemption).

However, the Court need not reach the issue of whether ERISA preempts the Nebraska Unfair Insurance Trade Practices Act because the statutes in question do not afford Schicker a private right of action. *See McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 928 (8th Cir. 2017) ("The Nebraska Unfair Insurance Trade Practices Act 'does not contemplate private suits, but instead vests powers and duties in the State Director of Insurance, who is empowered to enjoin and penalize certain prohibited acts.'" (quoting *Allied Fin. Servs., Inc. v. Foremost Ins. Co.*, 418

F. Supp. 157, 162 (D. Neb. 1976))). Accordingly, Schicker cannot state a claim upon which relief can be granted under the Nebraska Unfair Insurance Trade Practices Act.

### III.    CONCLUSION

For the foregoing reasons, the Court finds Plaintiff has failed to state a claim upon which relief can be granted.

IT IS THEREFORE ORDERED:

1. Defendant's Motion to Dismiss (Filing 6) is granted;

2. Plaintiff's Complaint (Filing 1-2) is dismissed without prejudice;

3. The Court will enter a separate judgment dismissing the case without prejudice.


Dated this 29th day of October, 2019.

BY THE COURT:

Brian C. Buescher
United States District Judge